Good morning. May it please the court, my name is Mark Kokanovich. I'm here today as appointed counsel on behalf of Mr. Remedio. Before I begin, I would like to reserve a few minutes of time for rebuttal. The clerk has indicated that the lights will go off. Unless the court has initial questions, I would like to address what I believe are the facts. The evidence in the record, of course, is that we are looking at this case in a summary judgment posture. Rather, the court is looking at this case on summary judgment. And summary judgment is reviewed de novo. Summary judgment is only appropriate if the evidence read in light most favorable to Mr. Remedio demonstrates that there is no genuine issue of material fact. The evidence in the record clearly demonstrates that there are several disputed issues of material fact. The evidence strongly favors Mr. Remedio, at least when it's viewed in the light most favorable to him. In 2002, Mr. Remedio signed a petition to press for changes in the college program. Because he was a signatory to the petition, his cell was searched, his parole was revoked, he was placed in solitary confinement for over four months, and he was transferred to a maximum security prison or a higher security prison. Was he put in solitary because they found contraband in his cell? Well, Your Honor, they found contraband in his cell after they searched his cell. Do they need a reason to search his cell? They do not, but they cannot search his cell for an improper reason. Any retaliation for exercise of valid rights that are retained by prisoners, and I think the case law is very clear on the point that prisoners retain their rights to file prison grievances and petition for prison grievances. And the proposals are clearly core protected First Amendment rights that prisoners don't lose when they are in prison. But what damage would he suffer? In other words, as I understood your answer to Judge Silverman's question, the prison could have had a policy of random searches three or four times. Yes. Solitary confinement, et cetera, would have occurred. So what are the damages that are cognizable? Well, Your Honor, the question is precisely whether those – whether it would have occurred had it just been that they found a few pieces of contraband in his cell if he had not have been a signatory to the petition. The allegations, as Mr. Remedio has put them forward in his verified complaint, are that he was punished in this draconian manner because he was a signatory, not because he was a signatory. He was punished because of the contraband. Now, you may argue he wouldn't have been caught with the contraband but for the search that was prompted, you allege, by this wrongful motivation. But he was still caught. And there's not an exclusionary rule that I know of that operates here. So I'm not sure that I understand why it is the parade of horribles that follows isn't cut off right there. He did have the contraband. He doesn't dispute that. Well, I agree with Your Honor that he was searched because of the fact that he was a signatory to the petition. And that in and of itself is impermissible under the Constitution. That may be where your claim stops. Well, I disagree with that, Your Honor, because he would not have been punished in the draconian manner that he was were it not for the fact that they were trying to send a message to people not to sign petitions of this sort. Suppose they found a knife in his cell. What then? There may be a more clear case that what happened afterwards was justified. But in this case, there is no evidence that he was a danger. These pieces of contraband do not merit the same type of draconian punishment that he received. And their additional excuse that, well, we were worried that because his parole may be revoked, we had to keep him segregated and separated, that just doesn't wash. Couldn't authorities, law enforcement authorities, have legitimate reasons for investigating someone because of something said by that person in the exercise of his First Amendment rights? I mean, suppose I write a letter to the President, which I'm entitled to do, and in it I say some pretty nasty things, not that I'm making any direct threat, but enough so that the Secret Service says, gee, this is somebody we might want to watch. Is the Secret Service precluded from checking me out just because I'm entitled to petition the government? Well, Your Honor, that's a good question. I think that both the Bradley and the Bruce cases address that issue, that Bradley specifically says that you can write things that are fairly derogatory, even threatening, the Bradley case says, and the prison authorities aren't justified in punishing him for that. And that's what happened here. It's not just that he was searched, but that he was punished for signing the proposal. And that's the fundamental ---- You're saying there's a ---- the issue of fact is whether the specific extent and nature of the punishment was caused solely by the contraband or whether it was influenced by unpopular speech as well, and that but for the speech maybe he wouldn't have been put in a different level of confinement or whatever. That's your point. That is part of the point, Your Honor. And I think that the initial point as well that Judge Silverman and I think Judge Clifton also suggested that the argument might stop at is an additional point, that the fact that he was searched to begin with was because he was a signatory to the petition. And the defendants have admitted as much. It strikes me, just speaking for myself, though, that strikes me as more problematic because of the opportunity to do as much searching as they want in the prison context. Well, they can do as much searching as they want in the prison context, but they're not allowed to search all black inmates, for example. They can search for whatever reasons they want as long as they're permissible reasons. You can't search all Hispanic inmates or all, in this case, Filipino inmates or all inmates that signed petitions. That's just not fair, and it's not constitutional. So they can search for lots of reasons but not for invalid reasons, much like an employer can fire under an at-will contract for many reasons but not for impermissible reasons. What if the motives were mixed? Well, then this case is at summary judgment, Your Honor. And I think the fundamental problem with the lower court's decision was that they credited the defendant's account and discredited Remedios' account, and that is impermissible at summary judgment. So if this Court were to find that the motives were mixed, I believe it would have to go back to the lower court to decide what was the primary motivating factor and whether or not one factor predominated. And I think the evidence is pretty clear that the factor that predominated in this case, at least if we look at the facts and the evidence in the light most favorable to Remedios, as we're required to do, suggests that it was because he was a signatory to an unpopular petition. Do you want to reserve some time, Mr. Chiu? I would like to reserve some time. Thank you very much, sir. Good morning. Austin Cattermull, Deputy Attorney General for Defendants and Appellees. May it please the Court. Great. On July 30th of 2002, the security squad at San Quentin completed an investigation into the San Quentin College Program. The conclusions of that investigation were, one, that five inmates had improperly The second conclusion was that two inmates and two volunteers had improperly fostered personal relationships through which they used to traffic materials into and out of the institution without the warden's consent, which may be a misdemeanor under the penal code. The third conclusion was that, in one case, an inmate and a volunteer fostered a highly inappropriate romantic relationship, well outside the scope of a volunteer-inmate relationship put forth by the San Quentin College Program policy. That wasn't this inmate, right? The only application that applies to those conclusions are the first one. This inmate was found to have improperly fostered a movement to remove the program coordinator. Why is that improper? If the inmates want to replace the cook because all the food is too salty and they talk about that, or they don't like the program coordinator and they want to talk about that, what's wrong with that? Well, it's important to note that he wasn't punished for that. It was just noted in the conclusion. Isn't that the question exactly for some fact-finder is whether he was punished in part for that as well as for the contraband that was found? Well, going back to the alleged protected speech in this case, which is this petition dated March 11th of 2002, it's important to remember the context in which that occurred. There's a formal grievance procedure set forth in Title 15 of the regulations through which inmates submit grievances, and they shall be lodged by staff and reviewed by staff. This grievance, the so-called petition, didn't come to staff's attention. So are you alleging that it's not protected by the First Amendment for some reason? Well, I am alleging that, for example, in the Connick v. Myers case, the Supreme Court ---- No, no. I'm asking you about this petition. It wasn't done as a grievance, but it wasn't threatening or violent or obscene. It was just, we really want to see a change. We don't like what's going on. It was that protected speech. This Court has held that grievances are protected speech under the First Amendment. What I would like to just point out is that the context in which it occurred, it wasn't so much the content of the speech, but it was that, the fact that it had taken place sort of without staff's knowledge for two months, that staff had found out about problems through staff who had trouble with inmates in the program. Well, I understand your view that it wasn't procedurally appropriately done, but under, it was protected speech. And now the question comes, is there a connection between that speech and the search? I think that you've conceded that there is a relationship. There was a relationship, Your Honor. And so why isn't there a question of fact as to whether what happened as a result of finding the contraband was entirely because of the contraband or was partly because of the contraband and partly because of wanting to punish somebody for speaking out of turn, that is, filing a grievance not through the proper channels? Well, again, I would go back to the context in which it took place and the evidence in the record. That is, we were at summary judgment. Plaintiff was represented by counsel in these proceedings at summary judgment. He submitted no extrinsic evidence supporting his allegations. Defendants submitted substantial evidence saying that, look, this was about the context in which this took place and the concerns that two of these inmates who had signed the proposal had previously been involved in improper relationships with volunteers. But not this, not this inmate. Not this particular one. And I guess the difficulty I have with that is that we have cases at least in the analogous context of employment saying that what's in somebody's head is usually or someone's motivation is usually shown by circumstantial evidence and not directly. For example, if someone else had an obscene magazine in their cell, what had happened to them versus what happened to this person? And that you can't defeat necessarily summary judgment by just saying I'm not a I guess that's my concern with your position. Well, I'd like to try to address that by maybe drawing an analogy to the employment context. These inmate retaliation claims all originate out of the Mount Healthy case, which does talk about a burden shifting that occurs that the plaintiff comes forward with some evidence showing adverse motive, retaliatory intent substantially motivated the adverse action.  I think that the plaintiff has to come back and say those facts, those legitimate reasons are, in fact, pretextual or illusory, and here's why. In this case, plaintiff submitted no evidence. Well, does he need more evidence? The petition is really what it's about because the prison's response adds to the petition the gloss that two other people, two other prisoners had these inappropriate relationships, but that really doesn't speak to this individual at all. So you come right back to the petition. As best I can tell, the only reason for the search for this individual was the petition plus the fact that two other people who signed it had been involved or were suspected of being involved in inappropriate relationships. I would submit there's a couple more reasons, Your Honor. One, the petition itself, again, it's not so much the content as it is that it's illustrative of other concerns that were raised to staff. On April 29th, for example, two teachers in the volunteer program came to Defendant Nienhuis and stated that they were concerned about demands being made in the program and that inmates were becoming more aggressive in meetings and demanding more contact with volunteers. Defendant Nienhuis also became aware through the coordinator that inmates wanted to change the nature of the relationship of volunteers they had in the program. So there's this underlying activity occurring when staff receives a grievance that was dated two months ago, completely outside of their knowledge. Were those linked specifically to these four individuals or to this plaintiff in particular? Only in the manner of the fact that the demands enumerated in the petition are similar to those that were being made apparently at these meetings. Were the names of any other inmates identified by those teachers or volunteers who relayed the complaints? Your Honor, that's not on the record. Just turning quickly, I think that defendants are at least entitled here to qualified immunity. Their actions were clearly, if not unlawful, in the situations that they confronted. It was almost mandated. It would have been a dereliction of duty for them not to look into this problem given that the concerns that were coming to them. And the fact that they searched Plaintiff Zell did have something to do with the petition. It was motivated by that and the context in which that petition arose. However, as this Court's noted, there were other reasons for the string of adverse actions plaintiff alleged happened. He admitted possessing obscene materials. Is there anything in the record that shows what is the typical punishment meted out to a person who has an obscene picture in his cell? Well, in this case, there's nothing in the record about the typical nature of that. In this case, it was found to be an administrative infraction and he was counseled and reprimanded. The plaintiff, again, has come forward with no evidence showing that this was a typical reaction for obtaining, for possessing obscene materials. He's carried no burden here. I guess in closing, I'd just like to note that in a Supreme Court's entitled Connick v. Myers, which discusses discrimination or retaliation in the employment context, a Deputy District Attorney in New Orleans was terminated for submitting a grievance, specifically for submitting a grievance in the Deputy District Attorney's office. And in that case, the Supreme Court held that, one, the speech at issue in that grievance was not a matter of public concern, largely. The small amount was. And to the extent that it was, the employer proffered legitimate reasons that required the termination of this employee. And it's hard to imagine that inmates in California prisons have more First Amendment protection than Deputy District Attorneys or other public employees. Thank you. Thank you. Mr. Kucinich, you get the last word. Thank you, Your Honors. To respond to a few of the points made, on the qualified immunity point, Rhodes v. Robinson, I think, is instructive. And it's clear, over and over, this Court has said that when retaliation is at issue, qualified immunity is not appropriate, because retaliation is clearly not protected in that context. On the mixed motive point, it's important that there's a burden shifting that takes place. And as Judge Graber pointed out, the defendants have not put forward anything that suggests there's a policy of placing someone in solitary confinement for over four months, transferring them, and doing all these other parade of horribles when there's a minor administrative rule violation. Did you come up with any evidence to show that other people who have pornography in their cells are treated differently than this guy? Mr. Remedio, who's served a significant amount of time before he was released, has in his verified complaint that this is abnormal. That's the only evidence in the record. And he also says – Does that count for summary judgment purposes? Can you rely on your complaint, or don't you have to put in affidavits? A verified complaint counts as, and it's been admitted by defendants, and the case law is clear on that point as well. It's the cases in our briefs. I'm not able to recall it right now. But the verified complaint counts as an opposing affidavit in the summary judgment context. He's sworn to these facts. Does he explain in what way it was abnormal, what normally happens, or was it just a conclusion that it's abnormal? It was pretty conclusionary, Your Honor, to be honest. But the fact of the matter is he knows that this doesn't happen. And he was told specifically that the reason he would be transferred by his counselor was that he signed the petition. That's pretty damning evidence. Except that not everybody who signed the petition was transferred. No, not everyone that signed the petition. Only the Asian inmates were punished. Only the ones where contraband was found. Well, that's not entirely true either, Your Honor. The contraband was found in Mr. Leib's cell, and he was prosecuted too late. So there's questions about that as well. So I think that this case is even stronger than the Bruce case. And in the Bruce case, Your Honor pointed out what would happen if there were a knife in his cell. In the Bruce case, he was an alleged member of a gang, and that was found to be pretextual. In this case, he was alleged and admitted to have something that had been sent to him two years before, had been searched and sent on to him through the prison system. He had these pieces of paper that constituted a minor rule violation, and these terrible things happened to him. And he spends three extra years in prison, is transferred to a higher security institution, and I think that it's pretty clear, unless the Court has any questions, I see that my time is about to expire. Thank you very much to both counsel, Mr. Kucinich, especially to you for taking this case and doing it so well. The case is adjourned. It is submitted.
judges: Silverman, Graber, Clifton